**UNITED STATES of America,**
**Appellee,**

v.

**Vincent SCHWENOHA and Nathan Suess,**
**Appellants.**

**No. 71, Docket 31240.**

United States Court of Appeals
Second Circuit.

Argued Sept. 25, 1967.

Decided Sept. 28, 1967.

Frederick F. Greenman, Jr., Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, Robert G. Morvillo, Pierre N. Leval, Asst. U. S. Attys., of counsel), for appellee.

Samuel Rowe, New York City, for appellants.

Before MOORE, SMITH and KAUFMAN, Circuit Judges.

**396**

IRVING R. KAUFMAN, Circuit Judge:

This appeal reveals a typical stock fraud upon the public which the Securities Act of 1933, 15 U.S.C. § 77a et seq., was designed to prevent. Vincent Schwenoha purchased in 1956 all the outstanding stock of the Belmont Divide Mining Corporation, a paper corporation that had ceased doing business in 1924. He and others devised a plan to sell this worthless stock to the public without registering it with the Securities and Exchange Commission. The corporation's name was changed to Belmont Oil Corporation, certain oil leases of unspecified value were given to the corporation to create the appearance of assets, the stock was split ten for one to create more shares to sell to the public and placed in the names of nominees to conceal the fact of control by a handful of conspirators. Nathan Suess then joined the conspiracy and assisted in finding brokers who would sell the worthless stock to the naive and trusting public. Calling himself the public relations man for Belmont Oil, Suess met with co-defendants Edward Cantor and Michael Canter at the office of their brokerage firm, Peerless-New York, Inc., and arranged for them to maintain a market for Belmont stock and also to sell the stock to the public. These and other brokers sold Belmont to the public for about one dollar per share by typical boiler-room methods. Eight co-defendants pleaded guilty;[1] appellants were convicted by a jury of conspiracy and also found guilty of causing unregistered Belmont stock to be mailed on July 14, August 6, and October 2, 1959 for the purposes of sale and delivery after sale.

■ Appellants' main contention is that the stock was exempt from the registration requirements of the Securities Act because it was issued originally in 1919, long before the passage of the Act in 1933. They rely on section 3(a)(1) of the Act, 15 U.S.C. § 77c(a)(1), which ex-empts from registration "any security which, prior to or within sixty days after May 27, 1933, has been sold or disposed of by the issuer or bona fide offered to the public, * * *" But, their dependence on this argument ignores the language of the remaining portion of that sentence, which states, "but this exemption shall not apply to any new offering of any such security by an issuer or underwriter subsequent to such sixty days * * *" It is undisputed that the sale of Belmont stock to the public was a new offering, and there is little question that appellants were issuers or underwriters. See 15 U.S.C. § 77b(11); Securities and Exchange Commission v. Culpepper, 270 F.2d 241 (2d Cir. 1959). The evidence is overwhelming that they and others acted together to control Belmont Oil thoroughly and completely, and that they knew the stock they sold to various brokers would be resold to the public; in truth, that was their ultimate goal.

■ Moreover, appellants urge that Judge Palmieri committed reversible error by not charging the jury with respect to the applicable five-year statute of limitations. This claim is wholly without merit because it is undisputed that the mailings for which appellants were convicted occurred between July 14 and October 2, 1959. Accordingly, the acts occurred within five years of the filing of the indictment on July 14, 1964. Burnet v. Willingham Loan & Trust Co., 282 U.S. 437, 51 S.Ct. 185, 75 L.Ed. 448 (1931). Appellants call to our attention, however, that they individually did not commit acts within the statutory period. In this connection, Schwenoha urges that he testified that he withdrew from the conspiracy in March 1959. But as we noted in United States v. Borelli, 336 F.2d 376, 388 (2d Cir. 1964), cert. denied sub nom. Cinquegrano v. United States, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965), "mere cessation of activity is not enough to start the running of the statute; there

---

1. A mistrial was declared as to one co-defendant; five corporate co-defendants were tried separately.

must be affirmative action, either the making of a clean breast to the authorities, * * * or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." The record is clear that the alleged withdrawal does not come close to meeting this test; in any event, no exception was taken to the failure to charge on the issue of withdrawal. See F.R.Crim.P. 30; United States v. Kahaner, 317 F.2d 459 (2d Cir.), cert. denied, 375 U.S. 836, 84 S. Ct. 74, 11 L.Ed.2d 65 (1963). The evidence of withdrawal being insufficient to raise a question for the jury, *a fortiori* appellants' motion for acquittal on this ground was properly denied.

We have examined appellants' other claims and find them to be without merit. The judgment is affirmed.