UNITED STATES of America, Appellee,

v.

Manuel D. MENENDEZ, Appellant.

No. 832, Docket 79–1015.

United States Court of Appeals, Second Circuit.

Argued April 6, 1979.

Decided Nov. 26, 1979.

Graham Hughes, New York City (Gerald L. Shargel, New York City, on the brief), for appellant.

Susan E. Shepard, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., and Mary McGowan Davis, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before MULLIGAN, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Manuel D. Menendez appeals from a judgment of conviction, after a jury trial in the Eastern District of New York, Jacob Mishler, *Chief Judge*, of conspiring to distribute 45 pounds of heroin in violation of 21 U.S.C. § 846 (1976), for which he was sentenced to 15 years in prison, to be followed by lifetime special parole, and fined $25,000.

Appellant's chief claim of error on appeal is that certain incriminating tapes of wire-tapped conversations should not have been admitted in evidence because there were delays in the sealing of the tapes and asserted flaws in the warrants authorizing the interceptions. This claim is foreclosed

to appellant by our recent decision rejecting the same claim with respect to the same wiretapped conversations in *United States v. Vazquez*, 605 F.2d 1269 (2 Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979).

Appellant raises other subordinate claims of error, all of which we find to be without merit.

We affirm.

I.

We assume familiarity with the facts set forth in Judge Meskill's comprehensive opinion in *United States v. Vazquez, supra.* Appellant Menendez was one of the defendants indicted in the *Vazquez* case.[1] The factual background of both cases is substantially the same. The following brief summary of the relevant facts is believed sufficient to an understanding of the legal issues upon which we rule in this opinion.

Menendez, Vazquez and others operated a sophisticated drug wholesaling and distribution network which was international in scope. It dealt in enormous quantities of narcotic drugs which were transported across the continent by a private air force maintained by the ring.[2]

The chief government witness at the trial of Menendez was one Rodelo. He was an Aero Mexico agent in Tucson, Arizona, who helped with the smuggling of the drugs involved. The government also introduced various intercepted and recorded conversations among the conspirators. The control of the ring was described succinctly by Rodelo: "[Menendez] was supposed to take care of the business in the Eastern part and Vazquez in the Western part."

Rodelo had seen Menendez in Arizona during 1975 on at least two occasions. In January 1975, Menendez offered Rodelo $1,500 to move four tires from the trunk of Rodelo's car which was parked in a hot, open-air lot at the Tucson airport. Rodelo earlier had placed the tires there at Vazquez' request, but Rodelo was unaware that the direct heat of the sun might spoil the contents of the tires—42 pounds of heroin. Rodelo refused Menendez' offer of $1,500 and declined to move the tires. Vazquez moved the car himself. Menendez complained bitterly that he, Menendez, was supposed to "take care of the business" back East. Menendez added that he and Vazquez were not supposed to be together, for if "something happened" to one, the other should be in a position to make bail and retain counsel for his confederate.

From mid-1975 to May 1976, Rodelo helped Vazquez send a series of identical American Tourister suitcases to Mexico, ticketed in such a way as to avoid customs inspection. Rodelo had seen one such suitcase opened when it was delivered in Mexico. It was filled with cash. Menendez also was present at a Tucson motel in October 1975 when Rodelo picked up two suitcases bound for Mexico. Two later suitcases in the series were seized in Queens, New York, toward the end of the period of the conspiracy. They contained 45 pounds of heroin.

Menendez' voice was recorded throughout late 1977 and early 1978 on wiretaps authorized and carried out in New Jersey. The pattern of the calls indicated that he remained active in drug dealing. In one recorded conversation Menendez tried to get word to Vazquez to call him. In another he complained that Vazquez had not repaid a large sum of cash which Menendez had given him for safekeeping.

When police raided the Vazquez home in Las Vegas they seized, among other items, a document dated March 1, 1977 which recorded Vazquez' receipts and expenses in connection with a drug shipment. One of

1. The reason for the separate trial and hence the separate appeal in the case of Menendez is that he was a fugitive at the time of the *Vazquez* trial.

2. Menendez was tried with a co-defendant, James E. Walker. He was the pilot who was accused of operating the narcotics ferry service. Heroin was transported from Mexico and the West to the New York area. Return flights carried cocaine to California. Walker denied that he knew the nature of his cargo. He was acquitted.

the items listed under expenses[3] was $50,-000 for "Manolito," a code name by which Menendez was known and which he used on one taped occasion to refer to himself.

As part of his defense at trial, Menendez called an accountant who testified to his income in 1975 and 1976. He introduced a transcript of a recording of a September 1977 conversation in which another conspirator, acting as agent for Vazquez in the distribution and sale of the January 1978 drug shipment, told the conspirator's mother not to disclose his whereabouts to Menendez.[4]

After the government rested, Menendez' counsel made a general motion for acquittal based on the asserted failure of the government to establish participation by Menendez in the conspiracy. The motion was denied. The jury returned a verdict finding Menendez guilty. From the judgment entered upon the jury's verdict, this appeal has been taken.

## II.

Appellant's chief claim on appeal, as indicated above, is that certain incriminating tapes of wiretapped conversations should not have been admitted in evidence because there were delays in the sealing of the tapes and asserted flaws in the warrants authorizing the interceptions.

We reject this claim upon the authority of *United States v. Vazquez, supra,* since the claim here is the same as that in *Vazquez* and relates to the same wiretapped conversations as we dealt with in *Vazquez.*[5]

## III.

Appellant also contends, for the first time on appeal, that venue was laid improperly in the Eastern District of New York. The

---

3. The actual heading was "Salidas", which a government witness translated as "expenses".

4. Chief Judge Mishler earlier had informed counsel that the suppression-sealing delay claims regarding the wiretap tapes would be treated as having been raised and preserved for appeal in the *Menendez* case by the identical claims made in the *Vazquez* case.

---

factual basis for this claim is the assertion that appellant had withdrawn from the conspiracy by 1977. The factual basis for this assertion of course is essential to the claim, since the seizure of 45 pounds of heroin in the Eastern District of New York in 1978, among other things, surely would establish the propriety of venue in that district.

■ The long accepted rule is that a conspirator is presumed to continue in the conspiracy until the last overt act of any of the conspirators. *E. g., United States v. Katz,* 601 F.2d 66, 68 (2 Cir. 1979); *United States v. Schwenoha,* 383 F.2d 395, 396–97 (2 Cir. 1967), *cert. denied,* 390 U.S. 904 (1968). In *United States v. Panebianco,* 543 F.2d 447 (2 Cir. 1976), *cert. denied,* 429 U.S. 1103 (1977), we affirmed the conviction of a defendant of conspiracy to violate the federal narcotics laws, even though his withdrawal claim rested on the ground that he was in a federal prison at the time involved. The claim that he had withdrawn from the conspiracy, however, was not raised at trial.

■ In the instant case, the only evidence even remotely bearing on the withdrawal claim was that Menendez had trouble reaching Vazquez.[6] This hardly is the equivalent of affirmative acts inconsistent with the purpose of the conspiracy, communicated in a manner likely to become known to the other members of the conspiracy. *United States v. United States Gypsum Co.,* 438 U.S. 422, 463–64 (1978).

■ Aside from the doubtful factual underpinning for the withdrawal claim, however, there is another barrier to raising an objection to venue for the first time at this late date. As we held in *United States v. Price,* 447 F.2d 23, 27 (2 Cir.), *cert. denied,* 404 U.S. 912 (1971):

---

5. The author of this opinion in the instant *Menendez* case also was a member of the panel in the *Vazquez* case.

6. Vazquez also had problems in reaching Cortina, a co-conspirator who owed him large sums of money, but this did not prevent the two from dealing in drugs.

"Although our precedents establish that the constitutional underpinning and importance of proper venue dictate that waiver of objections to venue should not be readily inferred, we have identified two situations where a finding of waiver is proper: (a) when the indictment or statements by the prosecutor clearly reveal this defect but the defendant fails to object; and (b) when, after the government has concluded its case, the defendant specifies grounds for acquittal but is silent as to venue." (citations omitted). *Accord, United States v. Boney*, 572 F.2d 397, 400–01 (2 Cir. 1978) (venue objection waived when general acquittal motion was made without referring to venue); *United States v. Rivera*, 388 F.2d 545, 548 (2 Cir.), *cert. denied*, 392 U.S. 937 (1968).

■ Referring to the second situation identified in *Price*, the instant case falls in that classification on all fours. At the close of the government's case, Menendez' counsel made a general motion for a judgment of acquittal relying solely on the asserted failure of the government to establish Menendez' participation in the conspiracy. No claim regarding his withdrawal from the conspiracy was made and no objection to venue was asserted.

We reject appellant's claim that venue was improper.

### IV.

■ Appellant argues that he was entitled to a limiting instruction to the jury that his participation in the conspiracy ended before the summer of 1977.

Aside from the absence of any factual basis for such an instruction, as we have held above under section III, it of course is elemental that his failure to make a timely request for such an instruction at trial precludes our considering the claim on appeal. Fed.R.Crim.P. 30.[7]

### V.

■ Finally, appellant claims he was denied the effective assistance of counsel at trial. This claim is predicated chiefly on the failure of his trial counsel, George Wiggs, Esq., to raise the withdrawal issue.[8]

Based on what we have said above with respect to that issue and based on our careful examination of the record as a whole, we hold that appellant was not denied the effective assistance of counsel under any standard—and certainly not under the stringent standard in this Circuit. *United States v. Wight*, 176 F.2d 376, 379 (2 Cir. 1949), *cert. denied*, 338 U.S. 950 (1950). *Accord, e. g., United States v. Bubar*, 567 F.2d 192, 201–02 (2 Cir.), *cert. denied*, 434 U.S. 872 (1977); *Rickenbacker v. Warden*, 550 F.2d 62, 65–66 (2 Cir. 1976), and cases there cited, *cert. denied*, 434 U.S. 826 (1977); *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2 Cir.), *cert. denied*, 429 U.S. 849 (1976).

We have examined carefully all of appellant's claims of error and find them to be without merit.

Affirmed.

---

7. Likewise, Menendez' failure to establish or even argue withdrawal undercut the need for a limiting charge on use of the wiretaps. In any event, Chief Judge Mishler was careful to caution the jury about the need to connect each defendant with the conspiracy by non-hearsay evidence before considering co-conspirators' hearsay evidence against him.

8. Appellant also argues that his trial counsel failed to raise the tape suppression issue and that he failed to move for a severance. The former assertion is frivolous; Wiggs did not raise this issue because he was obeying Chief Judge Mishler's instruction that such objections, already raised in *Vazquez*, would be treated as having been made and denied in *Menendez*. The only ground for a severance would have been withdrawal from the conspiracy, for which there was no factual support.