**UNITED STATES of America, Plaintiff,**

v.

**Cesar RAMIREZ, Orlando Gonzalez, et al., Defendants.**

**No. 84 Crim. 257 (WCC).**

United States District Court, S.D. New York.

Feb. 19, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the United States of America; Charles G. LaBella, Daniel N. Perlmutter, Asst. U.S. Attys., New York City, of counsel.

Neil V. Getnick, New York City, for defendant Orlando Gonzalez.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Orlando Gonzalez ("Gonzalez") is one of ten defendants charged in a superseding indictment filed October 4, 1984 with conspiracy to violate federal narcotics laws. 21 U.S.C. § 846. Specifically, he and his codefendants are charged with having conspired to distribute and possess with intent to distribute cocaine. Indictment at Count I. A variety of pretrial motions were filed, but six of the ten defendants have now entered guilty pleas and the Court is presented here only with the issues raised by Gonzalez.[1] Each is addressed below.

### I. Dismissal of the Indictment

Gonzalez asks that the Court exercise its discretion to examine the grand jury minutes and dismiss the indictment if it finds an absence of adequate evidence before the grand jury. Gonzalez offers several reasons why he suspects the grand jury lacked sufficient evidence to indict. He points to the fact that he is not named in any of the overt acts, and that his alleged role is not particularized in any way. He notes that his review of affidavits submitted by Special Agent John Dowd ("Agent Dowd") in support of electronic surveillance applications revealed only one reference to him among all the intercepted conversations mentioned by Dowd, and that Gonzalez "merely answered a telephone call and engaged in a [one-minute] telephone conversation which in no way implicates him in a conspiracy."[2] Getnick Aff. of June 27, 1984 at ¶¶ 9, 10. He contends, finally, that

because the Government expanded the scope of its electronic surveillance on several occasions as it discovered the names of individuals whose conversations it expected to intercept, but never added Gonzalez's name, the Government had no expectation of intercepting any more of his conversations as part of an ongoing conspiracy. *Id.* at ¶ 12. According to defendant, all of these factors suggest that inadequate evidence was presented to the grand jury.

■■■ Although this Court has discretion to examine grand jury minutes in order to determine whether adequate evidence was placed before a grand jury, *see United States v. Tane,* 329 F.2d 848 (2d Cir.1964), such an examination is not lightly undertaken and will not be performed here. There is no question but that the paragraph excerpted from Agent Dowd's affidavits provides less than compelling support for a probable cause determination with respect to Gonzalez. Nonetheless, as a general rule, an indictment which is valid on its face and which was returned by a legally constituted grand jury is not subject to challenge on the ground that it is based on inadequate or incompetent evidence. *See United States v. Greater Syracuse Board of Realtors, Inc.,* 449 F.Supp. 887, 898 (S.D.N.Y.1978) and cases cited therein. As the Supreme Court recognized in *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956):

If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to

1. Defendant Raul Cuevas has moved to suppress certain evidence seized during a search of the apartment where he was residing. The Court has advised Cuevas that the matter will be resolved at an evidentiary hearing held immediately before the commencement of trial.

2. Agent Dowd's affidavit summarizes the conversation as follows:

On March 23, 1984, at 5:55 P.M., RAMIREZ placed a telephone call to telephone no. (212) 929-6151 ... and spoke in Spanish with JOHN DOE, a/k/a "Orlando." RAMIREZ asked where "Javier" was and was told he wasn't in. RAMIREZ then stated "28" and asked "Orlando" "how much." "Orlando" replied: "Listen, I don't have that programmed. When he returns let him call you. What's more we have to talk to you so that tomorrow you go to the unintelligible."

Dowd Aff. of April 19, 1984 at ¶ 49.

determine the competency and adequacy of the evidence before the grand jury.... An indictment returned by a legally constituted and unbiased grand jury ... is enough to call for trial of the charge on the merits.

*Id.* at 363, 76 S.Ct. at 408–409 (footnote omitted).

█ Inspection of grand jury minutes is generally reserved for situations in which a defendant claims a gross and prejudicial irregularity, or presents some other compelling and particularized need. *United States v. Aloi,* 449 F.Supp. 698, 738 (S.D.N.Y.1977). Because no such need has been shown here, Gonzalez's motion is denied.

## II. *Severance*

Gonzalez next seeks an order pursuant to Rule 14, F.R.Crim.P. granting him a severance from the remaining defendants and a separate trial.[3] He argues that the crux of the Government's case against him consists essentially of the intercepted phone conversation mentioned above, and says that his involvement is "so minimal ... that to try him jointly with individuals allegedly involved in an extensive seven-year conspiracy to distribute large amounts of cocaine in New York City would be irredeemably prejudicial." Getnick Aff. of Dec. 13, 1984 at ¶¶ 18, 20.

█ It is obvious from even a cursory review of Count I that Gonzalez is not a key figure in the conspiracy charged.[4] Nonetheless, as the Court of Appeals for the Second Circuit recently recognized, "[i]t is almost inevitable that in an unlawful scheme or conspiracy involving several defendants some will be shown to have been more culpable than others," and a defendant is not entitled to a severance simply because some evidence relates only to code-fendants. *United States v. Panza et al.,* 750 F.2d 1141, at 1149 (2d Cir.1984). A defendant seeking a severance "must shoulder the difficult burden of showing that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *Id.; see also United States v. Losada,* 674 F.2d 167, 171 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). Because motions made under Rule 14 require courts to weigh the facts, circumstances and claims of prejudice of each case, the determination of whether severance is proper is addressed to the judge's discretion, and will not be reversed absent a showing of substantial prejudice. *United States v. Cunningham,* 723 F.2d 217, 229–30 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984).

█ I cannot conclude that Gonzalez will be prejudiced if he is tried with the defendants remaining in the case, and I therefore deny the severance motion. Six defendants including "kingpin" Cesar Ramirez have entered pleas of guilty, and as a result, this trial will be neither long nor complicated. Only two counts of the original twenty-three remain for trial. Two of the four defendants are police officers whose involvement apparently centers around their receipt of payments for protection services, and although Gonzalez's involvement has not been particularized, it seems unlikely that the jury will confuse the facts as they relate to the respective defendants. The other remaining defendant, Raul Cuevas, also appears to have had a relatively insignificant role which should not prove difficult for a jury to discern. Thus, there is no strong likelihood of prejudicial spillover or juror confusion due to the number of

---

3. Gonzalez has not argued that joinder is impermissible under Rule 8, F.R.Crim.P.

4. Moreover, Gonzalez is not a subject of any of the remaining counts of the indictment. He is named in only one of the twenty-three counts, while another defendant, Cesar Ramirez, is the subject of twenty-one separate counts which charge that, in addition to participating in the cocaine conspiracy, he possessed with intent to distribute cocaine, managed a continuing criminal enterprise, committed various violations involving an awe-inspiring array of firearms, made false passport statements and corruptly influenced a grand jury witness. Severance from Ramirez is no longer an issue, however, because Ramirez has entered a plea of guilty.

counts, the number of defendants, or the length of proceedings. Moreover, there is no reason to conclude that any potential for spillover effects cannot be eliminated by proper jury instructions.

It is apparent, in addition, that considerations of judicial economy would be ill-served by separate trials. Cesar Ramirez will be the key prosecution witness and presumably he will establish the existence of the conspiracy in which all defendants allegedly joined. Thus, separate trials would result in considerable repetition of direct testimony. It is also fair to assume, in light of the scope of Ramirez's own illegal activities, that a significant amount of trial time will be spent on impeachment. This testimony, too, would have to be repeated if Gonzalez were tried separately. None of the prejudice arguments presented by Gonzalez is sufficient to justify the burden that would be placed on the Court if the motion were granted. The motion for severance is denied.

### III. *Suppression of Taped Conversations*

Gonzalez next requests an order compelling suppression of recorded conversations to which he was a party. He seeks this relief "for the reasons set forth in the suppression motion of defendant Cesar Ramirez." Getnick Aff. of Dec. 13, 1984 at ¶ 22. Ramirez, whose own motions have now been mooted by his guilty plea, challenged the Government's use of evidence seized by means of electronic surveillance on grounds that: (1) the original application and requests for extensions were unsupported by probable cause; (2) the authorizations were not "executed as soon as practicable"; (3) the Government failed adequately to demonstrate that other investigative procedures had been tried without success; (4) the Government's agents failed to minimize the interception of communications not properly subject to interception; and (5) the Government failed to have its tapes sealed immediately.

### A. *Probable Cause*

The conversations Gonzalez seeks to suppress were recorded by means of a wiretap placed on the telephone at Ramirez's jewelry store and a "bug" installed inside the same premises. Gonzalez challenges the probable cause determinations of Judge Gerald L. Goettel, who issued the electronic surveillance authorizations in this case, on the ground that certain information relied upon by Judge Goettel was false. Specifically, Gonzalez looks to Agent Dowd's affidavit in support of the initial application, wherein Dowd reported that Edith Collado, who was Ramirez's former wife, and another individual named Jose Ortega, had each reported that Ramirez was involved in heavy volume cocaine dealing. The basis of the assertion that this information was false is an affidavit submitted by Ramirez's prior counsel, in which counsel averred that Ramirez told him of a conversation with Collado in which she denied ever having made such a statement, and another conversation in which Ortega advised Ramirez "through an intermediary" that Ortega had made a similar denial.

Ramirez contended, and thus Gonzalez now contends, that probable cause "evaporates" once the Collado and Ortega statements are excluded. Zapp Memo. In Support of Ramirez Motion to Suppress at 7. He argues that the remaining averments provide "only the scantiest indication, far short of probable cause" to believe that electronic surveillance would reveal evidence of narcotics violations. *Id.*

The Government responds that the unsworn allegations of defendant Ramirez cannot support a motion to suppress, and that there was "overwhelming evidence" to establish probable cause to believe Ramirez was using his business telephone and his store to conduct a large narcotics business. It asserts, moreover, that no claim for relief could be sustained under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) because, even assuming the statements of Agent Dowd were false, there is no evidence to suggest they were made "with knowledge or with reckless disregard for the truth," and no showing

that the statements were material.[5] Gov't Memo. in Opp. to Defendants' Motions at 5–7.

It is important to note, in resolving the questions raised here, that probable cause to issue a wiretap order exists when the facts made known to the issuing magistrate are sufficient to warrant a prudent man in believing that evidence of a crime will be obtained through the use of electronic surveillance. *United States v. Fury*, 554 F.2d 522, 530 (2d Cir.), *cert. denied*, 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978). Moreover, the magistrate is to review the affidavit submitted in support of the application *as a whole*, and is to test that affidavit in a common-sense fashion. *Massachusetts v. Upton*, — U.S. —, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984) (per curiam). As the Government correctly adds, this Court must give substantial deference to a prior judicial determination that probable cause existed, *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964); *United States v. Londono*, 553 F.2d 805, 810 (2d Cir.1977), and should resolve any doubts as to the existence of probable cause in favor of upholding the authorization. *United States v. Jackstadt*, 617 F.2d 12, 14 (2d Cir.), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980).

I have reviewed the affidavit submitted by Agent Dowd in light of the aforementioned considerations, and I have concluded that, even assuming the statements in question were false, the remaining allegations were more than sufficient to establish probable cause. The great majority of Agent Dowd's affidavit is devoted to information provided by a confidential informant named Medina, who had achieved some success in infiltrating Ramirez's operations during a seven-month period prior to the wiretap application. Additional incriminating information came from Ramirez's second wife, Cleopatra Ramirez. The statements attributed to Collado and Ortega play a very insignificant part in Agent Dowd's affidavit, and it strains credulity to suggest that Judge Goettel might not have authorized electronic surveillance absent those statements. They are not material, and in addition, there is no evidence of willful or intentional wrongdoing on the part of Agent Dowd. A *Franks* hearing is therefore unnecessary.

With respect to the assertion that there was an insufficient showing to justify the three extensions granted by Judge Goettel, I cannot agree that the surveillance activities had shown "poor results," or that the applications contained "few conversations of significant evidentiary value ... and many more conversations which are hopelessly ambiguous." Zapp Memo. at 8. The affidavits clearly indicate that Ramirez and those who dealt with him frequently used code phrases; many of the conversations are enigmatic indeed. On the other hand, there are also conversations in which the parties unambiguously discussed cocaine transactions, *see, e.g.,* Dowd Aff. of Mar. 16, 1984 at ¶ 14; Dowd Aff. of April 13, 1984 at ¶ 8, and other conversations which, although "coded," create strong inferences of such conduct. ("At 5:37 P.M., RAMIREZ had a conversation with an individual whose voice matched that of [Pajes] concerning the price of rocks ("piedras") and the price of a kilo." *Id.* at ¶ 7.) Statements such as these are surely sufficient to warrant a prudent man in believing that continued interception would reveal further evidence of narcotics violations.

---

**5.** In *Franks,* the Supreme Court held that where a defendant makes a substantial preliminary showing that the affidavit in support of a search warrant contained false statements that were made knowingly, intentionally, or with reckless disregard for the truth, and that those false statements were necessary to a finding of probable cause, the defendant is entitled to a hearing. 438 U.S. at 155–56, 98 S.Ct. at 2676–77. If, at the hearing, the defendant establishes by a preponderance of the evidence that the statements were false and that the remainder of the affidavit is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded. *Id.*

### B. *Availability of Normal Investigative Procedures*

Gonzalez argues that when the Government made application for electronic surveillance, it failed to comply with 18 U.S.C. § 2518(1)(c), which provides that the application must include

a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

Defendant concedes that this provision does not require that normal investigative techniques be exhausted before the Government may resort to electronic eavesdropping; it requires only that the Government inform the Court "of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979), *quoting United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.1976).

 In his affidavit supporting the initial application, Agent Dowd devoted approximately three pages to the subject of alternative available procedures. He indicated that although a confidential informant had been utilized, the informant's usefulness was limited because Ramirez had taken steps to insulate the acts of associates from the scrutiny of others, and had not divulged to the informant his source of supply or distribution network. Agent Dowd indicated that Ramirez was closely connected with others in the neighborhood around his store, and that the area was therefore inhospitable to physical surveillance efforts. Agent Dowd also mentioned concern that since Ramirez was being advised by New York City policemen and was utilizing the services of lookouts, normal surveillance techniques would be detected. He discussed inherent limitations on the usefulness of physical surveillance and pen registers for purposes of gathering evidence for trial, and also explained why an investigative grand jury was unlikely to produce results. I am satisfied, on the basis of these averments, that Judge Goettel was advised of the nature and progress of the investigation, and that he properly concluded that the difficulties inherent in the use of normal law enforcement methods justified resort to electronic surveillance.

### C. *Delay in Executing the Authorization Order*

 Defendant Gonzalez also incorporates Ramirez's argument that intercepted conversations should be suppressed because the Government failed to follow Judge Goettel's order that the surveillance authorization be executed "as soon as practicable." According to defendants, the Government "delayed" installing the surveillance equipment until the 30-day period initially authorized for interception had almost expired.

The February 17, 1984 affidavit of Agent Dowd indicates at paragraph six that there was a delay in the commencement of interceptions due to a variety of factors that made undetected access to the store difficult:

[T]he reasons for the delay included the following: the designated premises contain a number of video surveillance cameras and alarms; the designated premises is on a commercial street which has a substantial amount of pedestrian and vehicular traffic on a 24-hour basis; and the designated premises has a number of locks and gates.

It may be true, as Gonzalez argues, that access to the store prevented introduction of the bug but not the wiretap. Nevertheless, I am confident that if Judge Goettel had thought the Government willfully violated or "blithely ignored" his order, as defendant suggests, he would have vacated his authorization, declined to approve an extension, or fashioned some other appropriate sanction.

Moreover, I am unpersuaded by the suggestion that the information underlying the initial authorization became stale in the period between Judge Goettel's order and the eventual equipment placement. Judge Goettel had before him evidence establish-

ing the existence of a long-standing and apparently well-established venture. If he had entertained doubts as to the continued viability of that information, he could have denied the extension application or sought a supplementary affidavit. In light of Judge Goettel's apparent satisfaction with the information he was presented, this Court will not intervene. *See United States v. Martino*, 664 F.2d 860, 869 (2d Cir.1981) ("[W]e agree with the implicit finding of Judge Leval, who did not vacate the wiretap authorization upon receiving the report of the delay, that the information supporting the authorization had not become stale in the intervening five days.")

### D. *Failure to Minimize Interception*

■ Defendant has provided absolutely no support for his argument that the Government failed to comply with the statutory requirement that interceptions be conducted in such a way as to minimize the interception of communications not otherwise subject to interception. I have reviewed the seven-day reports submitted to Judge Goettel and I am satisfied that there was an awareness of and adherence to the minimization requirement. Counsel for both Ramirez and Gonzalez had access to the tapes and logs, and neither even attempted to show that "a substantial number of nonpertinent conversations had been intercepted unreasonably." *United States v. Cirillo*, 499 F.2d 872, 881 (2d Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974).

### E. *Failure to Seal Tapes Immediately*

The final argument proffered by Gonzalez for suppressing evidence gathered through electronic surveillance received only the most cursory treatment in each party's submissions. Notwithstanding the litigants' apparent lack of interest in pursuing the merits of this claim with vigor, the question of whether the tapes at issue were "immediately" sealed in conformity with 18 U.S.C. § 2518(8)(a) presents the Court with significant problems.

■ Section 2518(8)(a) of Title 18 provides in part:

> Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions.

The Court of Appeals for the Second Circuit has recognized that the immediate sealing of these recordings is an integral part of the statutory scheme, and has held that the admissibility of tape recordings at trial is conditional upon the presence of a judicial seal or a "satisfactory explanation" for its absence. Even where a judicial seal is present, a satisfactory explanation must be provided if the seal was not obtained "immediately." *United States v. Vazquez*, 605 F.2d 1269, 1274 (2d Cir.1979), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1980).

In *Vazquez*, the Second Circuit stated that "a sealing achieved one or two weeks after expiration of a wiretap cannot be considered 'immediate'" in that sealing is often possible within one or two days. Thus, the court held that any delay beyond one or two days "certainly calls for explanation." *Id.* at 1278. In the instant case, the Government concluded its interception in the early morning hours of Friday, April 20, 1984. The tapes were then taken to the DEA evidence vault for storage, but were not sealed by Judge Goettel until Friday, April 27, 1984. The Court is therefore required to determine whether the Government has proffered a "satisfactory explanation" for the delay. For the reasons stated briefly below, the Court is unable to make such a ruling on the record before it, and will therefore set the matter for an evidentiary hearing prior to trial.

In support of its delay, the Government has submitted an affidavit of the Assistant United States Attorney who supervised the investigation in this case. He avers that after the tapes were placed in the vault on April 20, 1984, he took part in arraignments all day. Over the weekend and during the next week, he was

engaged in writing additional arrest and search warrants, coordinating efforts to locate a number of fugitives, attending bail review hearings and discussing possible dispositions with a number of defense counsel.

Perlmutter Aff. at ¶ 7. In essence, the prosecutor failed to have the tapes sealed because he was busy.

The Second Circuit has considered various factors in determining whether the Government's explanation is "satisfactory" under § 2518. These include: the length of the delay; evidence of tampering; time required to duplicate, label, check and prepare the tapes for sealing; and prejudice caused to the defendants by delay. The court has stated, however:

> Needless to say, section 2518 was not intended to bar use of wiretaps only when the defendant can show prejudice or present evidence of tampering or other governmental bad faith. The statute imposes an affirmative responsibility on the Government.

*United States v. McGrath*, 622 F.2d 36, 43 (2d Cir.1980). The court's opinion in *McGrath* followed shortly after *Vazquez*, *supra*, wherein a strong warning was issued to the Government and to the district courts. After holding that seven-to-thirteen-day delays were justified where the Government had presented uncontroverted testimony establishing, *inter alai*, shortages of personnel and equipment, a need for on-going evaluation of the intercepted conversations, and a need for duplicating, labelling and checking the tapes before sealing, the court said:

> [I]n law as in life, today's satisfactory explanation may very well be tomorrow's lame excuse. As the federal and state case law in this area grows, the failure to foresee and, where possible, prevent sealing delays becomes less justifiable, as law enforcement officials must be expected to learn from their own experiences and those of others. As other courts have done, "We decline to allow the police to rely on their own failure to use proper equipment or to institute more efficient procedures as an excuse

for delay." [citation omitted]. The wiretapping statute imposes a duty on the judiciary as well as on the prosecutor. It is our role to exclude from evidence tapes not sealed in conformance with the law, and we are aware that by faithfully performing this statutory duty we encourage law enforcement officers to perform their duties in an equally rigorous manner.

*Id.* at 1280. The court concluded by reiterating that it would not hesitate to exclude evidence when appropriate.

■ The justifications offered by the Government in *Vazquez* seem far more compelling than those presented here, and yet the court in *Vazquez* characterized the question as "close." *Id.* at 1279. Although I can sympathize with the heavy obligations placed on an Assistant United States Attorney when a big case "breaks," and while I am reluctant to exclude highly probative evidence, I am not prepared to rule at this time that a "satisfactory explanation" has been offered for the seven-day delay in sealing these tapes. While the delay is not especially long and there is no evidence of tampering or bad faith, I find it significant that none of the delay appears to be attributable to a need to process the tapes themselves; indeed, if I read the prosecutor's affidavit correctly, the tapes remained in a vault during the entire intervening period. In light of the Second Circuit's clear directive, it is incumbent upon this Court to ascertain that the delay was not caused by the Government's plain and simple failure to regard sealing the tapes as a priority.

The Court will hold a hearing prior to trial at which the Government must provide a further, or at least a more detailed explanation, for the delay. If the Court is not convinced that the explanation is "satisfactory" within the meaning of *Vazquez* and other relevant precedents, all tapes that were not timely sealed will be excluded.

## IV. *Bill of Particulars*

On June 27, 1984, counsel for Gonzalez served a discovery request upon the

Government and annexed a bill of particulars. The Government has declined voluntarily to provide the information Gonzalez seeks, and Gonzalez now moves for an order compelling responses under Rule 7(f), F.R.Crim.P. In essence, defendant asks the Government to state: the date he first joined the conspiracy; the dates, times and locations of his alleged involvement; the names of co-conspirators with whom he allegedly dealt directly; and the names of participants identified after the indictment was filed. Further, Gonzalez seeks any documentation that would verify his presence at any meetings or activities.

The Government has submitted its usual response to such motions, arguing that a bill of particulars is not an investigative tool for the defense, and is not a device to compel the Government to disclose its evidence or legal theories. Gov't Memo. in Opp. to Defendants' Motions at 32. The Government stresses that the ultimate test of the appropriateness of a bill of particulars is "whether the information is necessary, not whether it is helpful to the defendant." *United States v. Leighton*, 265 F.Supp. 27, 35 (S.D.N.Y.), *aff'd*, 386 F.2d 822 (2d Cir.), *cert. denied*, 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282 (1968). With respect to the instant case, the prosecution concludes that "the indictment on its face clearly sets forth the specifics of the conspiracy ..., thereby obviating the need for further particulars." Gov't Memo. at 31.

 The purpose of a bill of particulars is to apprise the defendant of the essential facts of a crime so that he can adequately prepare a defense, avoid prejudicial surprise at trial, and plead double jeopardy in subsequent actions. *United States v. Greater Syracuse Board of Realtors*, 438 F.Supp. 376, 379 (S.D.N.Y.1977). Because the Government should not be forced into prematurely disclosing evidentiary matters in a form that may unduly confine its proof at trial, a bill of particulars should be required only "where the charges of an indictment are so general that they do not advise the defendant of

the specific acts of which he is accused." *United States v. Leonelli*, 428 F.Supp. 880, 882 (S.D.N.Y.1977). The Second Circuit has held that the trial judge has discretion to determine whether a bill should be provided, what its scope and specificity should be, and how much time will be allowed the defendant to consider the information in preparing his defense.

 I have reviewed Count I of the indictment and cannot agree with the Government that it sets forth "specifics." None of the overt act allegations mentions Gonzalez; he is mentioned only as one of ten co-conspirators charged with violations of 21 U.S.C. § 846. Moreover, the taped conversation alleged to have involved Gonzalez provides no illumination. This is not enough information for Gonzalez to prepare an adequate defense. The Government argues that "Gonzalez is aware of the nature of the charges against him," Gov't Memo. in Opp. to Gonzalez Motions at 8, but offers no support for this statement. As recognized by the court in *Greater Syracuse Board of Realtors, supra*, "it is no answer that the defendant should know the facts demanded, for the defendant is presumed innocent; in any event, the Bill of Particulars is aimed at the facts as alleged by the Government, rather than as they actually exist." *Id.* at 379.

It is now the eve of trial, and there should be little prejudice to the Government in having to divulge some of the facts crucial to Gonzalez's defense. Therefore, the Government is instructed to provide forthwith:

(1) A statement of the approximate date, time and location where it is claimed that Gonzalez conspired to violate federal narcotics laws;

(2) A statement of the names of other co-conspirators with whom Gonzalez allegedly conspired with or dealt with directly;

(3) A statement as to whether Gonzalez was present at any meetings, gatherings or conferences described in the overt act allegations; and

(4) Documentation which tends to verify any meeting or conference in which Gonzalez allegedly participated.

The Government need not provide defendant with a listing of the overt acts performed by him in furtherance of the conspiracy.

### V. *Miscellaneous Requests for Relief*

 Gonzalez seeks an order directing the Government to provide him with the names and addresses of all prosecution witnesses. The Government is not required to produce such a list absent a particularized showing of need. *United States v. Cannone*, 528 F.2d 296, 301–02 (2d Cir.1975). No showing has been made and the motion is therefore denied.

Gonzalez's request for a pretrial hearing to determine the admissibility of co-conspirator declarations is also denied. As Judge Weinfeld of this Court recently ruled, such a hearing need not be held prior to trial:

> In our Circuit, ... the matter is admissible upon the trial court's determination, made at the close of the government's case, of the sufficiency of the evidence, independent of the hearsay testimony, that the alleged co-conspirator participated in the conspiracy.

*United States v. Wilson*, 565 F.Supp. 1416, 1437 (S.D.N.Y.1983).

The request for pretrial disclosure of all alleged prior or subsequent similar act evidence that the Government intends to offer is denied. Gonzalez may seek a ruling on the admissibility of such evidence during the course of the trial.

Gonzalez seeks an order pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny directing the Government to produce all information favorable to the defendant and material either to guilt or innocence or punishment. The Government has responded that it fully recognizes its obligations under *Brady* and will make appropriate disclosure of *Brady* materials. Trial of this matter is now only two weeks off; the prosecution is therefore directed to turn over all previously undisclosed *Brady* material immediately. Should the Government have any question as to whether specific evidence constitutes *Brady* material, it may submit such evidence for *in camera* inspection.

With respect to Gonzalez's request that the Government specify whether the "Orlando" referred to in six designated intercepted conversations is alleged to be Orlando Gonzalez, the Court accepts the Government's statement that it recognizes its obligation to notify Gonzalez of any conversations to which he is alleged to have been a party. *See* Order of October 4, 1984. To date, the Government has identified for defense counsel only one such conversation. If the remaining wiretap issue is resolved in favor of the Government and the Government seeks to introduce additional conversations at trial, the Court will at that time entertain objection from Gonzalez on the ground that the Government failed timely to advise him of its position that he was in fact a party to such conversations.

The Court reserves judgment pending further submissions on the question whether the period from November 19, 1984 through January 2, 1984 should be excluded from the speedy trial computation.

SO ORDERED.