UNITED STATES of America, Appellee,

v.

Antonio BADALAMENTI, Andrea Gambino, Ferdinando Capasso, Defendants-Appellants.

Nos. 1327, 1328 and 1343, Dockets 86–1063 to 1065.

United States Court of Appeals, Second Circuit.

Argued May 28, 1986.

Decided July 2, 1986.

Kerri Martin, Asst. U.S. Atty., S.D.N.Y. (Rudolph W. Guiliani, U.S. Atty., S.D.N.Y., Ruth Wedgwood, Asst. U.S. Atty., of counsel) New York City, for appellee.

Christine E. Yaris, New York City (Gerald L. Shargel, Alan Futerfas, Law Student, on brief, of counsel), for defendant-appellant Badalamenti.

Barry Bassis, The Legal Aid Soc., Federal Defender Services Unit, New York City, for defendant-appellant Gambino.

Louis M. Freeman, Freeman, Nooter & Ginsberg, of counsel, New York City, for defendant-appellant Capasso.

Before FEINBERG, Chief Judge, KEARSE and MAHONEY, Circuit Judges.

FEINBERG, Chief Judge:

Antonio Badalamenti, Andrea Gambino and Ferdinando Capasso appeal from judgments of conviction following a jury trial before Judge Peter K. Leisure in the United States District Court for the Southern District of New York. All appellants were convicted on one count of conspiracy to distribute heroin in violation of 21 U.S.C. § 846; Capasso was also convicted on two counts of aiding and abetting the distribution of heroin and possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2. Appellants raise a number of issues on appeal, three of which merit detailed discussion. First, Badalamenti challenges the district judge's pre-trial ruling calculating the length of the government's delay in sealing tapes of intercepted conversations and his determination that the government had provided a satisfactory explanation for the delay. Second, Capasso claims that Judge Leisure improperly admitted an informant's hearsay statement against him under Fed.R.Evid. 803(3). Finally, Badalamenti objects to admission under Fed.R.Evid. 801(d)(2)(E) of co-conspirators' statements made before he joined the conspiracy. We find that the district judge's rulings on these issues were correct and that none of appellants' other arguments have merit. Accordingly, we affirm their convictions.

## I. Background

Along with Giuseppe Venuti, Calogero Mannino, Federico Spatola, Antonio Trinajstic and Carlos Trinajstic, appellants were indicted in December 1984, after an extensive investigation by the Drug Enforcement Agency (DEA).[1] From the evidence adduced at trial, the jury could have concluded that Spatola and Badalamenti supplied heroin to Mannino, Venuti and Antonio Trinajstic, who in turn distributed it to street-level dealers including undercover DEA agents and informants. During the course of their investigation, agents and informants purchased substantial quantities of heroin directly from Venuti, Mannino and Spatola. The members of the conspiracy communicated by using code references to heroin, such as "scissors," "haircuts" and "car." Gambino apparently assisted his brother-in-law Spatola by allowing him to use his restaurant for a meeting to negotiate a narcotics deal, handling money advanced for payment for heroin by a DEA agent and later relaying information to Spatola. Capasso, a long-time friend of Venuti, participated in several narcotics transactions between Venuti and undercover agents and informants and also acted as look-out on several occasions.

The 29-count indictment on which appellants were tried charged them and their co-defendants with conspiring to distribute heroin between July 1983 and December 1984 in violation of 21 U.S.C. § 846 (count one). In addition to the conspiracy count, Capasso was charged with aiding and abetting the distribution of heroin (count eleven), possession of heroin with intent to distribute on two occasions (counts twelve and twenty-three) and aiding and abetting the distribution of heroin within 1,000 feet of a school (count twenty-eight), in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 845a and 18 U.S.C. § 2. Prior to and during the course of the trial, all co-defend-

---

1. The December 1984 indictment also charged Enrique Ferri with participating in the conspiracy. However, a superseding indictment, filed in July 1985, named only these eight defendants.

ants except Carlos Trinajstic pled guilty to conspiracy and various substantive counts.[2]

The government's proof at the month-long trial consisted principally of testimony by DEA agents who conducted surveillance or posed as narcotics dealers, conversations recorded by consent or pursuant to court-authorized electronic surveillance and pen register tapes. After the trial, the jury found Badalamenti, Gambino and Capasso guilty on the conspiracy count. The jury also found Capasso guilty on two of the aiding and abetting counts, but acquitted him on the other two. Judge Leisure sentenced Badalamenti to a five-year prison term; he sentenced Gambino to three years, with execution of the sentence suspended, and three years probation. Capasso was sentenced to time served on count one, concurrent three year terms on counts eleven and twelve, with execution suspended, three years probation and three years special parole. These appeals followed.

## II. Sealing Delay

Wiretap evidence obtained under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., must be presented to a judge for sealing "[i]mmediately upon the expiration of the period of the order, or extensions thereof," authorizing interception of the communication. 18 U.S.C. § 2518(8)(a). The section further provides that "[t]he presence of the seal ..., or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication...." In *United States v. Gigante*, 538 F.2d 502, 507 (2d Cir.1976), we held that a "satisfactory explanation is required, not only for total failure to seal the tapes, but for failure to seal the tapes

'immediately' as well." In that case, we affirmed the exclusion of evidence where the delays in sealing ranged from eight months to over a year. See also *United States v. Vazquez*, 605 F.2d 1269, 1278 (2d Cir.1979), cert. denied, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1980) (delay beyond one or two days calls for explanation). The wiretap orders in this case permitted electronic surveillance of Venuti's apartment and telephone and the telephone in Mannino's barbershop. District Judge Irving Ben Cooper authorized the first Venuti tape for a 30-day period beginning on October 1, 1984, but extended it for another 30 days, until November 30. Badalamenti did not seek to suppress evidence obtained under the first Venuti tap. As to the extension, the government concedes that interception ceased on November 16. Tapes obtained under this tap were sealed on December 7, seven days after the expiration date and 21 days after interception terminated. The Mannino tap, authorized on November 8, expired on December 8; those tapes were sealed on December 21, 13 days after expiration. Defendants moved to suppress the evidence obtained under the Venuti extension and the Mannino order, claiming that the government had failed to seal these tapes immediately, as section 2518(8)(a) requires.

Based on his construction of the statutory phrase, "the expiration of the period of the order," the district judge calculated the delay from the date that the orders expired. Accordingly, he charged the government with seven- and 13-day delays and then considered whether the government had provided the "satisfactory explanation" required by the statute. The government initially attributed the delays

---

**2.** Before the jury was selected, Spatola and Antonio Trinajstic pled guilty. Spatola, who pled guilty to conspiracy and one substantive heroin distribution count, was sentenced to concurrent three-year terms and six years special parole. Trinajstic pled guilty to conspiracy and three distribution counts and received concurrent eight-year terms, to be followed by five years special parole.

Venuti and Mannino pled guilty during the course of the trial. Venuti entered his guilty

plea to conspiracy and 15 counts of distribution and was sentenced to concurrent ten-year terms, with execution suspended on seven of the counts, to be followed by concurrent five-year periods of probation and special parole. Mannino pled guilty to conspiracy and six substantive counts and received concurrent six-year sentences, with execution on three suspended, and special parole for five years.

The jury acquitted Carlos Trinajstic of all counts against him.

solely to the heavy workload of the Assistant United States Attorney responsible for sealing, Daniel Perlmutter (sometimes hereafter, the AUSA), but later cited a combination of his workload, illness, marital problems and illicit cocaine use as the cause. The AUSA did not testify. He indicated that, if called, he would invoke his privilege against self-incrimination. Defendants presented testimony to discount the time the AUSA actually spent on various matters and to show the lack of a "tickler system" to remind government attorneys of sealing deadlines.

After a five-day hearing, the district judge denied the motion to suppress. In his written opinion, he concluded that the "delays occurred because of the inability of a sick and severely troubled prosecutor to recognize his obligations under federal law." Although workload did not in and of itself provide an adequate explanation for the delay, Judge Leisure found that it "undoubtedly contributed to the sealing delays in this case." In evaluating the government's explanation, he also considered the length of the delays and the lack of evidence of tampering or prejudice to the defendants. See *United States v. McGrath*, 622 F.2d 36, 42–43 (2d Cir.1980).

On appeal, Badalamenti [3] argues that evidence from the Venuti extension and the Mannino order should have been suppressed. He claims that the district judge improperly calculated the length of the delay in sealing the Venuti extension tapes. He contends that the end of "the period of the order" in this case was the date interception ceased, November 16, not the date on which the order by its terms expired, November 30. On this view, the delay in sealing was 21 rather than seven days. In support of this construction, appellant cites section 2518(5), which requires that orders authorizing surveillance "terminate upon attainment of the authorized objective, or in any event in thirty days," and *United*

*States v. Ricco*, 421 F.Supp. 401, 406–07 (S.D.N.Y.1976), aff'd on other grounds, 566 F.2d 433 (2d Cir.1977), cert. denied, 436 U.S. 926, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978) (sealing requirements triggered by expiration of order's time period or attainment of its objective, whichever is earlier). As to the explanation for the delay, appellant maintains that the government failed to establish that the AUSA's workload did not allow him the time required for sealing. He argues that the AUSA's personal problems were an inadequate justification, since the sealing delay was his only mistake during this period. Appellant also faults the United States Attorney's Office for failing to institute efficient procedures, citing *United States v. Massino*, 784 F.2d 153, 158–59 (2d Cir.1986) (directing procedures to be followed in future sealing cases). Finally, Badalamenti claims that the government failed to establish the effect of cocaine use through expert testimony.

The government maintains that the district court's rulings on the sealing delays were correct. As to the method for calculating the delay, it contends that the district judge's approach was consistent with the language of section 2518(8)(a). Moreover, appellee maintains that, although interception actually ceased on November 16, it was prepared to resume surveillance. The government further argues that the district court's finding that it provided a "satisfactory explanation" for the delays is consistent with the law of this circuit and that expert testimony concerning the effects of cocaine was not required.

█ We believe that Judge Leisure properly found that the delay in this case began when the extension order expired, rather than when interception actually ceased. The terms of the order permitted surveillance "until communications are intercepted that reveal the manner in which Giuseppe Venuti, Cologero [sic] Mannino, Tony

---

**3.** Although all appellants adopt the arguments of their co-appellants to the extent possible, it is unclear that Gambino and Capasso have standing to raise this issue. Gambino was not intercepted and the government did not introduce tapes of any conversations involving Capasso. In light of our determination that the evidence was admissible, however, we need not decide the standing issue.

Trinajstic, Ferdinando Capasso, Stefano Cvitovich and others as yet unknown participate in the above-described [drug] offenses and that reveal the identities of their confederates, their places of operation and the full nature and details of the offenses and activities involved or for a period of thirty (30) days from the date" of the order, whichever was earlier. Judge Leisure found that the government "intended to resume monitoring the Venuti bug and tap during the authorized period" if its on-going investigation indicated that there was need to do so and that "[c]onsequently, the surveillance cannot be said to have 'terminated' on November 16." Thus, even under appellant's analysis of the statute, the judge found that the objective of the surveillance had not been attained on November 16. Because the facts of this case do not require us to decide the difficult question of whether sealing delays must be calculated from the expiration date of the order or from the date its objective is achieved, we decline to reach this issue, which was left open in *United States v. Vazquez*, supra, 605 F.2d at 1278 n. 21.

■ This court has consistently recognized the importance of compliance with Title III's sealing requirement and recently, in the exercise of its supervisory power, has established procedures to be followed in future cases. See *United States v. Massino*, supra, 784 F.2d at 158–59. In this pre-*Massino* case, however, the district judge carefully considered appellant's claim of noncompliance, conducting a lengthy evidentiary hearing and thoroughly exploring the government's justifications. Moreover, we agree with the district judge's conclusion that, in the unusual circumstances of this case, a combination of factors including Perlmutter's workload and his physical and emotional problems provided a satisfactory explanation of the sealing delays. In attributing a role to the AUSA's drug problem, Judge Leisure did not stress the physical effects of cocaine use. Rather, he focused on the AUSA's statements to the FBI, which indicated that he was distracted and "often spent time contemplating, during the performance of his official duties,

how he was going to obtain and consume cocaine during the evening hours." Expert testimony on this point was certainly not required.

### III. Admission of Informant's Statement Under Rule 803(3)

■ In another pre-trial ruling, the district judge determined that a statement by Umberto Lentz, an informant, to a government agent would be admissible at trial under Fed.R.Evid. 803(3). The government sought to introduce Lentz's statement that he was going to meet Venuti at 5:00 at the Cafe Borgia to obtain a sample of heroin. Judge Leisure found that, since the government offered this to show Lentz's future intent, it was not excludable hearsay under Rule 803(3). Relying on *United States v. Sperling*, 726 F.2d 69, 73–74 (2d Cir.), cert. denied, 467 U.S. 1243, 104 S.Ct. 3516(3), 82 L.Ed.2d 824 (1984) and *United States v. Cicale*, 691 F.2d 95, 103–04 (2d Cir.1982), cert. denied, 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983), the judge determined that the statement could be connected to Lentz's subsequent meeting with Capasso because it was corroborated by independent evidence.

Capasso argues that the corroborating evidence proffered by the government, e.g., his relationship to Venuti, the fact that he met Lentz at the Cafe Borgia and that Lentz later had samples of heroin, fails to establish his involvement in the drug transaction. He contrasts the corroborating evidence here with that presented in *Sperling*, supra, 726 F.2d at 74, and *Cicale*, supra, 691 F.2d at 104. Appellant maintains that this crucial statement was actually introduced to show his future intent, rather than that of Lentz. This, he argues, is impermissible under Rule 803(3), citing language in the House Report accompanying Rule 803(3). See H.R.Rep. No. 650, 93rd Cong., 1st Sess. (1973), reprinted in 1974 U.S.Code Cong. & Ad.News 7051, 7075, 7087 (statements of intent should not be admitted to prove the future conduct of a third party). He also contends that the district judge erred in refusing his request

for an evidentiary hearing to determine the precise nature of Lentz's statement. Had there been a hearing, he argues, he would have learned of the presence of another informant before it was revealed at trial and could have interviewed him.

In response, the government argues that the district judge's ruling was correct. It stresses the similarity between this case and *Sperling* and *Cicale*. Appellee asserts that, as in those cases, the statement was not offered to prove the subsequent conduct of Capasso or anyone other than Lentz. The statement was linked to Capasso's conduct only after the government proffered independent evidence corroborating his involvement. The government dismisses appellant's claim that the district court erred by failing to grant him an evidentiary hearing. It notes that Capasso does not show that the government's proffer was inaccurate in any significant respect.

We believe that the district judge's evidentiary ruling was correct. As the government points out, Judge Leisure stated that he was admitting Lentz's statement to show Lentz's own future intent. We find that this ruling was a proper application of Rule 803(3), since statements of future intent are not excludable as hearsay. See *Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 295, 12 S.Ct. 909, 912, 36 L.Ed. 706 (1892) (statements of future intent admissible to prove subsequent conduct). As to the connection between the statement and Lentz's subsequent meeting with Capasso at the Cafe Borgia, the district judge determined from the government's proffer that there was independent evidence of such a connection. Although the evidence corroborating Capasso's involvement was admittedly not as strong as the evidence in *Sperling* or *Cicale*, we find that it supports Judge Leisure's determination. Moreover, we do not believe that an evidentiary hearing on the issue was required, particularly since appellant does not specify how the lack of a hearing prejudiced him. The fact that the agent testified at trial that there was another informant present when Lentz made

the statement is of questionable significance, since it does not affect the admissibility of the statement. Furthermore, although Capasso now claims that, if he had known, he would have tried to interview the informant, he did not seek a continuance to do so when he was made aware of the other informant's existence.

## IV. Admission of Co-conspirators' Statements Made Before Badalamenti Joined the Conspiracy

■ Judge Leisure refused Badalamenti's request to instruct the jury that it could consider against him only those co-conspirators' statements made after he joined the conspiracy. Badalamenti argues that these statements are inadmissible under Fed.R. Evid. 801(d)(2)(E), which provides for admission of declarations by co-conspirators only if made "during the course and in furtherance of the conspiracy." He claims that Rule 801(d)(2)(E) changed prior law in this respect. See *United States v. Gypsum Co.*, 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed.2d 746 (1948) ("declarations and acts of various members, even though made or done prior to the adherence of some ..., become admissible against all"). In support of his contention, he cites decisions in other circuits, see, e.g., *United States v. Andrus*, 775 F.2d 825, 835 (7th Cir.1985) and this court's dictum in *United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir.1984). In response, the government contends that the district judge correctly determined that co-conspirators' declarations were admissible against Badalamenti, even if made before he joined the conspiracy. It argues that the *Gypsum* rule is the law in this circuit, both before the adoption of Rule 801(d)(2)(E), see, e.g., *United States v. Ramirez*, 482 F.2d 807, 816 (2d Cir.), cert. denied, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973), and after, see, e.g., *United States v. Ebner*, 782 F.2d 1120, 1127 (2d Cir.1986).

Since the adoption of the Federal Rules of Evidence in 1975, this circuit apparently has not ruled directly on this issue. Neither *United States v. Pedroza*, supra, cited

by appellant, nor *United States v. Ebner,* cited by the government, directly addressed it. The situation in *Pedroza* was not the usual one, such as that here, when the government charges a single conspiracy that the defendant has joined. *Pedroza* was a prosecution for kidnapping and conspiracy to kidnap, in which proof of an earlier narcotics distribution conspiracy was introduced by the government at trial only as background to show why some of the defendants were hired to kidnap the victim. This court ruled that statements made in furtherance of the drug conspiracy were not admissible against defendants who participated only in the kidnapping conspiracy. The court did not purport to change the *Gypsum* rule. *Ebner* also addressed a different question. In upholding one defendant's conviction on a tax fraud scheme, we rejected his claims that severance was required because he joined the conspiracy later than the other members. The court noted in passing that this did "not absolve him of 'liability for the conspiracy's unlawful acts committed both before and after his adoption of the conspiracy.'" 782 F.2d at 1127 (citation omitted); the court did not consider the admissibility of declarations made before he joined.

Most of the circuits, albeit with little discussion and no mention of Rule 801(d)(2)(E), have continued to adhere to the *Gypsum* rule, see, e.g., *United States v. Jackson,* 757 F.2d 1486, 1490 (4th Cir.), cert. denied, — U.S. —, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985); *United States v. Leroux,* 738 F.2d 942, 949–50 (8th Cir.1984); *United States v. Jannotti,* 729 F.2d 213, 221 (3d Cir.), cert. denied, — U.S. —, —, 105 S.Ct. 243, 244, 83 L.Ed.2d 182 (1984); *United States v. Cochran,* 697 F.2d 600, 603–04 (5th Cir.1983); *United States v. Tombrello,* 666 F.2d 485, 491 (11th Cir. 1982); *United States v. Cassity,* 631 F.2d 461, 464 (6th Cir.1980), vacated on other grounds, 468 U.S. 1212, 104 S.Ct. 3581, 82 L.Ed.2d 879 (1984). However, some circuits have not, see, e.g., *United States v. Andrus,* 775 F.2d 825, 835 (7th Cir.1985); *United States v. Dunn,* 758 F.2d 30, 39 (1st Cir.1985); *United States v. Gee,* 695 F.2d 1165, 1169 (9th Cir.1983). But see *United States v. Anderson,* 532 F.2d 1218, 1230 (9th Cir.), cert. denied, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976) (statements admissible). This latter group of cases relies principally on *United States v. Petrozziello,* 548 F.2d 20 (1st Cir.1977), where, in evaluating the standard of proof for admission of co-conspirators' statements under the new Evidence Rules, the First Circuit stated that:

> [t]he ordinary civil standard is sufficient: if it is more likely than not that the declarant and the defendant were members of a conspiracy *when the hearsay statement was made,* and that the statement was in furtherance of the conspiracy, the hearsay is admissible.

Id. at 23 (emphasis added).

Rule 801(d)(2)(E) provides that "a statement by a coconspirator of a party *during the course* and in furtherance of the conspiracy" (emphasis added) is not excludable hearsay. This hardly suggests the overruling of *Gypsum;* if anything, it supports the opposite view. Similarly, we find no persuasive reason in the Advisory Committee Notes or elsewhere in the legislative history to believe that the Rule was intended to change existing law. The Advisory Committee Notes to the proposed rule state that

> [t]he limitation upon the admissibility of statements of co-conspirators to those made 'during the course and in furtherance of the conspiracy' is *in the accepted pattern.* While the broadened view of agency taken in [801(d)(2)(D) ] might suggest a wider admissibility of statements of co-conspirators, the agency theory of conspiracy is at best a fiction and ought not to serve as a basis for admissibility *beyond that already established.*

(emphasis added). See also S.Rep. No. 1277, 93rd Cong. 2nd Sess. (1973) reprinted in 1974 U.S.Code Cong. & Ad.News 7051, 7073 ("The House approved the *long-accepted rule* that 'a statement by a coconspirator of a party during the course and in furtherance of the conspiracy' is not hearsay ...") (emphasis added). Contrary to

appellant's suggestion, we find the Advisory Committee's disapproval of the "agency theory of conspiracy" ambiguous, at best. For example, it could be interpreted as an explanation of why the Committee chose not to expand the traditional rule.

It is reasonable to expect that a "new recruit can be thought to have joined with an implied adoption of what had gone on before to enhance the enterprise of which he is taking advantage," where, as here, there is "sound reason to believe that he joined when he was generally aware of what his new partners had been doing and saying on behalf of the enterprise." 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(E)[01], at 250–51 (1985). See also 4 D. Louisell & C. Mueller, Federal Evidence § 427, at 347 (1980) (co-conspirator's statements before the party against whom it is offered joined the conspiracy are admissible under Rule 801(d)(2)(E)). Accordingly, we conclude that statements of Badalamenti's co-conspirators are admissible against him, even if made before he joined the conspiracy.

## V. Other Claims

■ Appellant Badalamenti [4] argues that the district judge should have disqualified the entire United States Attorney's Office for the Southern District of New York from the pre-trial suppression hearing. He claims that Canons 5 and 9 of the Code of Professional Responsibility required disqualification, since members of that office testified at the hearing. Such a claim ignores the distinction between government law offices and private attorneys, see, e.g., *In re Grand Jury Subpoena of Ford*, 756 F.2d 249, 254 (2d Cir.1985). Under the circumstances, we find that the district judge did not abuse his discretion by failing to order this unprecedented disqualification.

Badalamenti also claims that the government's refusal to immunize Perlmutter distorted the fact-finding process at the wiretap hearing, especially since the govern-

ment interviewed him in plea negotiations. Appellant claims that Judge Leisure should have inferred that the AUSA's testimony would have been adverse to the government's position. Since he was the target of an on-going investigation, we find that Badalamenti's belated request to immunize him was properly denied. See *United States v. Turkish*, 623 F.2d 769, 777–78 & n. 5 (2d Cir.1980), cert. denied, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). Since the AUSA's statements to the government were introduced at the hearing by stipulation, we do not believe that the government derived an unfair advantage. More importantly, however, appellant fails to show how the testimony could have helped his case. Accordingly, we cannot conclude that the district judge abused his discretion by refusing to draw an adverse inference from the AUSA's failure to testify.

■ All appellants maintain that the evidence adduced against them at trial was insufficient to sustain the jury's verdict. However, in evaluating this claim, we must view the evidence in the light most favorable to the government and construe all possible inferences in its favor, see, e.g., *United States v. Martino*, 759 F.2d 998, 1002 (2d Cir.1985). If *"any"* rational trier of fact could have found the essential elements of the crime," the conviction must stand. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979) (emphasis in original). Viewed according to this standard, we find that there was sufficient evidence to support the convictions of all three appellants.

■ Finally, appellants argue that the prosecutor's opening statement and summation deprived them of a fair trial. They cite statements emphasizing the family connections between members of the conspiracy, suggestions that they were being tried because they were guilty, misstatements of the law of conspiracy and "inflammatory"

---

4. As with the suppression issue, this claim and the immunity claim most probably can be raised only by Badalamenti. See supra note 3.

references to drug trafficking and the defendants. While a few of the prosecutor's comments, viewed in isolation, may have been inappropriate or inaccurate, we do not believe that, when considered in the context of the trial record as a whole, they deprived appellants of a fair trial. See *United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir.), cert. denied, —— U.S. ——, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). We note that the trial judge repeatedly instructed the jury that comments by counsel were not to be considered as evidence.

We have considered all of appellants' arguments for reversal and they are without merit. For the reasons stated above, we affirm appellants' convictions.